UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SIVERLINCE POINT DUJOUR,

                                 Petitioner,

v.

CHRISTOPHER J. LAROSE, Senior Warden of Otay Mesa Detention Center; TODD LYONS, Acting Director of Immigration and Customs Enforcement; Markwayne MULLIN, Secretary of the Department of Homeland Security; Todd BLANCHE, Acting Attorney General of the United States, U.S. Department of Justice,

                                Respondents.

Case No.: 3:26-cv-2207-JES-MSB

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS PURSUANT TO 28 U.S.C. § 2241**

**[ECF No. 1]**

Before the Court is Petitioner Siverlince Point Dujour's ("Petitioner") Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2241 ("Petition"). ECF No. 1, ("Pet."). Pursuant to the Court's Order to Show Cause (ECF No. 2), Respondents (the "Government") filed the Response. ECF No. 4, ("Res."). Petitioner filed his Traverse. ECF No. 5. The Court then took the matter under submission. For the reasons set forth below, the Court **GRANTS** the Petition.

//

1

## I.    BACKGROUND

On or about July 26, 2024, Petitioner, a native and citizen of Haiti, secured an appointment through the CBP One mobile application and presented himself for inspection at a U.S. port of entry. Pet. ¶ 25. On that date, the Department of Homeland Security ("DHS") exercised its statutory authority, under 8 U.S.C. § 1182(d)(5), to parole Petitioner into the United States and issued him a Form I-94, reflecting that grant of parole. *Id*. ¶ 26; ECF No. 1-2 ("Form I-94").

Following his release on parole, Petitioner complied with all conditions imposed by DHS and remained at liberty in the United States. Pet. ¶ 27. DHS never issued Petitioner any individualized written notice terminating his parole, pursuant to 8 C.F.R. § 212.5(e), nor did it make any individualized determination that the purposes of parole had been served or that humanitarian reasons or public benefit no longer justified his continued presence. *Id*. ¶¶ 28–29. Instead, DHS purportedly relied on a mass, categorical communication sent to parolees that did not provide any case-specific justification and did not comply with the procedural requirements governing termination of parole. *Id*. ¶ 29.

On March 1, 2026, Petitioner was arrested at a U.S. Border Patrol checkpoint in the interior of the United States, near Jamul, California. *Id*. ¶ 30. Following his arrest, Petitioner was transferred into immigration custody and transported to the Otay Mesa Detention Center, where he remains subject to mandatory detention. *Id*. ¶ 32.

## II.    LEGAL STANDARD

A writ of habeas corpus is "available to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A court may grant a writ of habeas corpus to a petitioner who demonstrates to be in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Traditionally, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in

that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, challenges to immigration-related detention are within the purview of a district court's habeas jurisdiction. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001); *see also Demore v. Kim*, 538 U.S. 510, 517 (2003).

### III.   DISCUSSION

Petitioner argues that DHS never lawfully terminated his parole and, therefore, lacks the statutory authority to detain him under 8 U.S.C. § 1225(b). Pet. ¶¶ 7–9. The Government filed its Response, in which it: (1) conceded that Petitioner was previously released from immigration custody on parole under 8 U.S.C. § 1182(d)(5); (2) acknowledged that it lacked sufficient information regarding whether Petitioner's parole was ever terminated; (3) did not assert that any individualized determination was made pursuant to 8 C.F.R. § 212.5(e); and (4) stated its non-opposition to the Petition. Res. at 2.

The Court finds that this issue has been addressed by the undersigned in a recent decision, *Gergawi v. Larose*. No. 3:25-CV-3352-JES-MMP, 2025 WL 3719321, at *2-4 (S.D. Cal. Dec. 23, 2025). Therefore, the Court elects to follow the reasoning stated in *Gergawi* and incorporates it by reference. *Id*.

### A.   Jurisdiction

While the Government does not contest the Court's jurisdiction over this matter, the Court finds it prudent to ensure it may hear this Petition. *See generally* Ret. Accordingly, the Court finds that 8 U.S.C. § 1252's jurisdiction stripping provisions do not bar this Court from considering Petitioner's claims. *See Martinez Lopez v. Noem et al.*, No. 25-cv-2717-JES-AHG, 2025 WL 3030457, at *2-3 (S.D. Cal. Oct. 30, 2025). Thus, the Court holds that it has jurisdiction over this action.

### B.   Procedural Due Process

It is undisputed that Petitioner was granted humanitarian parole pursuant to 8 U.S.C. § 1182(d)(5), on March 1, 2026, as evidenced by the issuance of a valid Form I-94. Pet. ¶ 26; *see* Form I-94. That grant of parole remained legally operative at the time of Petitioner's re-detention. *Id*. ¶¶ 7–8.

3:26-cv-2207-JES-MSB

The Court finds that the Government's conduct—here, granting Petitioner parole—resulted in Petitioner's acquisition of a liberty interest in remaining out of immigration custody. *See Gergawi*, 2025 WL 3719321, at *3-4; *see also Pinchi v. Noem*, 792 F. Supp.3d 1025, 1032 (N.D. Cal July 24, 2025). The Due Process Clause provides that the Government may deprive a noncitizen of such an interest, only *after* providing them with notice and an opportunity to be heard, prior to revoking their parole. *See Gergawi*, 2025 WL 3719321, at *3-4; *see also Pinchi*, 792 F. Supp. 3d at 1032.

Petitioner claims that he received no written notice that DHS intended to terminate his parole and no opportunity to be heard before being re-detained on March 1, 2026. Pet. ¶¶ 28–29, 54; ECF No. 5 at 3. The Government's Response does not contest these assertions. *See generally* Res. On this record, the Court finds that the Government failed to provide Petitioner with notice and an opportunity to be heard prior to revoking his parole, when he was re-detained in March of this year. *See Gergawi*, 2025 WL 3719321, at *3-4; *see also Pinchi*, 792 F. Supp. 3d at 1032. In doing so, Respondents violated Petitioner's due process rights. *C.A.R.V. v. Wofford*, No. 1:25-CV-01395 JLT SKO, 2025 WL 3059549, at *9 (E.D. Cal. Nov. 3, 2025); *Leiva Flores v. Albarran*, No. 25-cv-09302-AMO, 2025 WL 3228306, at *5; *Faizyan v. Casey*, No.: 3:25-cv-02884-RBM-JLB, 2025 WL 3208844, at *7 (S.D. Cal. Nov. 2025). Accordingly, the Court will order Petitioner's immediate release.

## IV.    CONCLUSION

For the reasons discussed above:

(1) The Court **GRANTS** Petitioner's Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241;

(2) Because the Court **GRANTS** the Petition and concludes that Respondents' revocation of Petitioner's parole violates procedural due process, Respondents are **ORDERED** to **IMMEDIATELY** release Petitioner from custody, subject to any conditions of his preexisting parole;

4

(3) Respondents are **ORDERED** to file a Status Report on or before **April 27, 2026**, confirming that Petitioner has been released; and

(4) The Clerk of Court is **DIRECTED** to **CLOSE** this case.

**IT IS SO ORDERED.**

Dated: April 21, 2026

_____
Honorable James E. Simmons Jr.
United States District Judge

5